UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| MARK SHORT, ) | | |
|     Plaintiff, ) | | |
| ) | | |
| vs. ) | | 3:10-cv-46-RLY-WGH |
| ) | | |
| HARTFORD BAKERY, INC., d/b/a LEWIS ) | | |
| BROTHERS BAKERIES, INC., ) | | |
|     Defendant. ) | | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Mark Short ("Plaintiff"), filed a Complaint against his former employer, Hartford Bakery, Inc., d/b/a Lewis Brothers Bakeries, Inc. ("Hartford"), alleging that Hartford unlawfully interfered with his rights under the Family Medical Leave Act ("FMLA"), as amended, 29 U.S.C. § 2601 *et seq*. Hartford now moves for summary judgment. For the reasons set forth below, the court **GRANTS** its motion.

**I.      Factual Background**

    **A.      Hartford's Policies and Procedures**

1. Plaintiff was hired as a floater in Hartford's Production and Sanitation Departments in August of 2006. (Deposition of Mark Short ("Plaintiff Dep.") at 45; Affidavit of Robert M. Renock ("Renock Aff.") ¶ 5).

2. Shortly after he was hired, but before he began working, Plaintiff received Hartford's Attendance Control Program and its Rules and Regulations. (Plaintiff

1

        Dep. at 44, 51, 56-57; Renock Aff. ¶ 7, Ex. 2).

3.     Hartford's Rules and Regulations provide, in pertinent part:

        ATTENDANCE

        1.     Failure to notify authorized company personnel not less than one (1) hour before scheduled reporting time when unable to report for duty.

                1st offense–Written reprimand
                2nd offense–3 day layoff
                3rd offense–Discharge

        (Renock Aff. ¶ 9, Ex. 1). Hartford's Attendance Control Program provides:

        Nothing in this policy relieves the employee of the obligation to notify their supervisor of absences or tardiness in sufficient time for a replacement to be made (at least one (1) hour before the start of a shift). Telephone calls may be made to the Answering Service (428-4427). Failure to properly notify Supervision will result in the following:

| | | |
|---|---|---|
| First instance | = | Written Warning |
| Second instance | = | One (1) day suspension without pay |
| Third instance | = | Discharge |

        (Renock Aff. ¶ 8, Ex. 1).

4.     When an employee does not call in or notify Hartford at least an hour before the start of his shift that he will be tardy or absent, the employee receives a No-Call/No-Show violation. (*Id.* ¶ 10).

5.     When a Hartford employee requests FMLA leave, or when a representative of Hartford learns of the need of an employee to be on FMLA leave, Hartford provides the employee with FMLA certification paperwork. (*Id.* ¶ 13).

6.     Hartford employees who either request or are provided FMLA certification

      paperwork are still required to follow Hartford's Rules and Regulations and Attendance Control Program until the completed FMLA certification paperwork is returned and the leave is approved. (*Id.* ¶ 14).

### B.    Plaintiff's Attendance Record

7. Plaintiff read and understood the No Call/No Show policies as provided in Hartford's Attendance Control Program and its Rules and Regulations. (Plaintiff Dep. at 51, 53, 54, 57). In fact, Plaintiff had reported his absences by calling the answering service at least one hour prior to his scheduled start time on prior occasions over the course of his employment at Hartford. (*Id*. at 59, 62, 65). Conversely, Plaintiff also received Correction Action Notices for his failure to comply with the Rules and Regulations on two prior occasions. (*Id*. at 158-61; Plaintiff Dep. Exs. 13, 14; Renock Aff., Ex. 5).

8. On November 2, 2008, Plaintiff failed to call the answering service to report his absence at least one hour prior to the start of his shift. (Plaintiff Dep. at 164; Renock Aff. ¶ 15). As a result, Plaintiff received a Correction Action Notice. Renock ¶ 16, Ex. 5).

9. Plaintiff sustained a shoulder injury on the job, and was off work from December 5, 2008, until April 4, 2009. (Renock Aff. ¶ 17). Plaintiff continued to have issues with his shoulder, and worked intermittently from April 4, 2009, to April 19, 2009. (*Id*.).

10. Because of continued shoulder problems, on April 20, 2009, Plaintiff's treating

physician ordered Plaintiff off from work until Monday, April 27, 2009. (*Id*.). He was scheduled to work the week of April 27, 2009 - May 1, 2009, and work the 12:30 p.m. shift Monday through Thursday, with a later starting time on Friday. (*Id*. ¶ 18, Ex. 4).

    **C.**    **Events Leading to Plaintiff's Termination**

11.    Sometime during the morning of Monday, April 27, 2009, Plaintiff left a voice mail for Robert Renock ("Renock"), the Vice President of Human Resources and Custodian of Records at Hartford. (Plaintiff Dep. at 118; Deposition of Robert Renock ("Renock Dep.") at 22; Renock Aff. ¶ 2). Plaintiff was prompted to make the morning call to Renock because of a text message from his girlfriend that read, "call work." (Plaintiff Dep. at 118, 120-21). The only part of the voice mail Renock could make out was that Plaintiff was in the hospital. (Renock Dep. at 22).

12.    Unbeknownst to Renock, Plaintiff was in the hospital because of a motorcycle accident that occurred on Friday, April 24, 2009. (Plaintiff Dep. at 115).

13.    On Tuesday, April 28, 2009, Plaintiff was discharged from the hospital. Plaintiff did not call the answering service to report his absence from work. (*Id*. at 123, 130, 157; Renock Aff. ¶ 15).

14.    On Wednesday, April 29, 2009, Plaintiff went to Renock's office. Renock observed that Plaintiff's arm was in a sling, "and he was bruised up with scabs and so on." (Renock Dep. at 30). At that time, Plaintiff gave Renock a note from Dr.

4

       Kuric, the neurosurgeon who treated Plaintiff in the emergency room following the motorcycle accident, that said Plaintiff needed to be off work until a scheduled follow-up appointment on May 29, 2009. (Renock Dep. at 41-42, Ex. 9). Plaintiff explained that he suffered trauma to his brain, and could not remember any details of the accident. (*Id*. at 28-30).

15. Renock informed Plaintiff he needed to provide Hartford with FMLA certification paperwork for his absences and offered to send the required FMLA paperwork to Plaintiff. (Plaintiff Dep. at 124-25, 188; Renock Dep. at 32).

16. Renock testified that he reminded Plaintiff that he needed to call the answering service to report his absences every day until his FMLA paperwork was returned and his leave was approved. (Renock Dep. at 32-33). Plaintiff testified that he did not remember if Renock reminded him of that required procedure, but "he may have." (Plaintiff Dep. at 125-26).

17. Plaintiff did not call the answering service to report his absences on Wednesday, Thursday or Friday (April 29-May 1, 2009). (*Id*. at 141, 157-58, 258).

18. Plaintiff received the FMLA paperwork from Hartford on April 30, 2009, which stated that it was due within 15 calendar days, but that "[a]dditional time may be required for some circumstances." (*Id*. at 142, 144-45, 188).

19. On May 13, 2009, Hartford wrote Plaintiff a letter, informing him that he was terminated for failing to follow Hartford's attendance policy, as mandated by Rule D-1, effective May 1, 2009. (Renock Aff. ¶¶ 15, 19, 22; Renock Dep., Ex. 17).

20. Renock testified that Hartford did not count Plaintiff's absence on Monday, April 27, 2009, against him, but he was not sure if Hartford counted Tuesday, April 28, 2009 (the date of his discharge from the hospital), against him. (Renock Dep. at 37). The balance of that week was counted against Plaintiff for purposes of Rule D-1, as was Plaintiff's November 2, 2008 absence. (*Id*. at 37-38; Renock Aff. ¶¶ 16, 22).

21. Plaintiff returned his FMLA paperwork on May 19, 2009. (Plaintiff Dep. at 146).

## II.   Summary Judgment Standard

Summary judgment is appropriate if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, in resolving a motion for summary judgment, the court views "the evidence as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." *Id.* (citing *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999)). With these principles in mind, the court now addresses the propriety of Hartford's motion for summary judgment on Plaintiff's FMLA interference claim.

## III.   Discussion

The FMLA grants eligible employees the right to take leave of up to twelve work

weeks in any twelve-month period where the employee has a serious health condition that renders him unable to perform the function of his position. 29 U.S.C. § 2612(a). Upon return from leave, an employee must be returned to the position he held before taking leave or an equivalent position. 29 U.S.C. § 2614(a)(1).

Under the FMLA, it is unlawful for an employer to interfere with an employee's attempt to exercise the rights established by the FMLA. 29 U.S.C. § 2615(a)(1). A plaintiff asserting an interference claim must establish the following five elements: (1) he was eligible for protection under the FMLA; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take FMLA leave; and (5) his employer denied him FMLA benefits to which he was entitled. *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 825 (7th Cir. 2011) (citations omitted). Hartford maintains that until Plaintiff turned in his FMLA paperwork and was formally granted FMLA leave, he was subject to Hartford's usual and customary notice and procedural requirements regarding attendance, pursuant to FMLA regulation. *See* 29 C.F.R. § 825.303(c) (stating that when the need for FMLA leave is unforeseeable, an employee must comply with the employer's usual and customary procedural requirements for requesting leave, "absent unusual circumstances"). Therefore, according to Hartford, it did not deny Plaintiff any FMLA benefits to which he was entitled.

"An employee who requests or takes protected leave under the FMLA is not entitled to any greater rights or benefits than he would be entitled to had he not requested or taken leave." *Serio v. Jojo's Bakery Rest.*, 102 F.Supp.2d 1044, 1051 (S.D. Ind. 2000)

(citations omitted).  In other words, "an employer is entitled to dismiss an employee for any lawful reason at any time, whether before, during, or after an employee requests or takes leave pursuant to the FMLA, as long as the employer does not discriminate or retaliate against the employee for requesting or taking such leave."  *Id.*  Accordingly, if, as Hartford suggests, Plaintiff did not comply with Hartford's Attendance Control Policy and Rules and Regulations, then its decision to terminate Plaintiff for his failure to comply with those rules was lawful.  However, if Plaintiff did comply with Hartford's attendance policies, then Hartford did interfere with his attempted FMLA rights.

Plaintiff contends that he complied with the "spirit" of Hartford's attendance policies by personally providing Renock with a note from Dr. Kuric stating that he would be unable to return to work until at least May 29, 2009.  Hartford has the right to, and does require, its employees to submit a completed FMLA certification from a physician.  29 C.F.R. § 825.305(a).  Until the certification paperwork is submitted and the leave is approved, Hartford's usual and customary practice is to require its employees seeking FMLA leave to comply with Hartford's attendance policies.  Hartford was under no obligation to remind Plaintiff of that policy.  On April 29, 2009, Plaintiff had not yet returned his FMLA certification paperwork and his leave was not approved.  Therefore, Plaintiff was required to call in to the answering service at least one hour before his shift was scheduled to begin.  It is undisputed that he did not call in from April 29, 2009, to May 1, 2009.  Accordingly, pursuant to Hartford's attendance policies, Plaintiff was terminated.  The court's ruling is consistent with this court's earlier ruling upholding the

same policy in *Neighbors v. Hartford Bakery, Inc.*, 2010 U.S. Dist. LEXIS 114416 (S.D. Ind. Oct. 22, 2010). *See also Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 710 (7th Cir. 2002) (holding that employer did not violate the FMLA by discharging employee on continuing FMLA leave because employee failed to comply with employer's attendance policy); *Thompson v. CenturyTel of Central Arkansas, LLC*, 2009 U.S. Dist. LEXIS 93842, at * 12 (E.D. Ark. Oct. 7, 2009) (affirming summary judgment in favor of employer who terminated employee that failed to follow the company's call-in policy seven times in a twelve-month period).

Plaintiff suggests that the trauma to his head impaired his cognitive function such that it prevented him from remembering to call the answering service to report his absences. Plaintiff's evidence, however, fails to show that the injury to his head *caused* his non-compliance with Hartford's attendance policies on the work days he received a No Call/No Show. Indeed, the evidence reflects that Plaintiff did make phone calls during the week of April 27, 2009, through May 1, 2009 – just not phone calls to the answering service. But even if Plaintiff were able to show that the injuries he sustained in the accident caused him not to call into the answering service, there is no evidence in the record that Hartford knew of that impairment.

Under the particular facts and circumstances of this case, Hartford's strict adherence to its attendance policies does appear harsh. Plaintiff was in a serious motorcycle accident, and Renock was aware of Plaintiff's need to be off work. This is not a reason to deny summary judgment to Hartford, however. This case is not about the

fairness of Hartford's policies; it is about whether Hartford unlawfully interfered with Plaintiff's right to take FMLA leave. The evidence of record indicates that Hartford applied its attendance policies to Plaintiff the same way it would have applied them to a Hartford employee who was not seeking leave. This is all the FMLA requires. Hartford's motion for summary judgment on Plaintiff's FMLA interference claim is therefore **GRANTED**.

## IV. Conclusion

The court finds no genuine issue of material fact exists as to whether Hartford unlawfully interfered with Plaintiff's attempted exercise of his FMLA rights by terminating his employment before the time his FMLA certification paperwork was due. Hartford's motion for summary judgment (Docket # 28) is therefore **GRANTED**.

**SO ORDERED** this  30th  day of January 2012.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Andrew Dutkanych III
BIESECKER DUTKANYCH & MACER LLC
ad@bdlegal.com

Greg J. Freyberger
KAHN DEES DONOVAN & KAHN, LLP
gfreyberger@kddk.com

Jacob R. Fulcher
KAHN, DEES, DONOVAN & KAHN
jfulcher@kddk.com

Christopher S. Wolcott
BIESECKER DUTKANYCH & MACER, LLC
cwolcott@bdlegal.com